Case No. 24-40546

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**Darryl George and Darresha George,**
*Plaintiffs-Appellants,*

**v.**

**Greg Abbott, Ken Paxton, Barbers Hill Independent School
District, Greg Poole, Lance Murphy and Ryan Rodriguez,**
*Defendants-Appellees.*

---

On Appeal from the United States District Court, Southern
District of Texas, Cause No. 3:24-cv-00012

---

**DEFENDANTS-APPELLEES BARBERS HILL INDEPENDENT
SCHOOL DISTRICT, GREG POOLE, LANCE MURPHY, AND
RYAN RODRIGUEZ'S MOTION TO DISMISS APPEAL**

---

TO THE HONORABLE UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT:

Barbers Hill Independent School District, Greg Poole, Lance
Murphy, and Ryan Rodriguez (the District Parties) move to dismiss the
appeal as follows:

## INTRODUCTION

1.    On August 6, 2024, the district court dismissed most, but not all, of Plaintiffs' claims against the District Parties. Exh. A at 30. On August 21, 2024, Plaintiffs tried appealing the district court's order. Exh. B at 1 (notice of appeal). The appeal was docketed on August 23, 2024. Dkt. 1. Six days later, Plaintiffs amended the notice of appeal and asked the district court to certify part of its order for immediate appeal. Exh. C at 2. The district court denied the certification request on October 8, 2024. Exh. D at 1.

2.    Generally, an order partially dismissing a case is interlocutory and unappealable. This Court may accept permissive interlocutory appeals if the appellant complies with Section 1292(b) and the Federal Rules of Appellate Procedure. Fed. R. App. P. 5. Plaintiffs didn't, and the district court declined to certify its order for an immediate appeal. Exh. D at 1. Accordingly, this Court lacks jurisdiction and must dismiss the appeal.

## LEGAL STANDARD

3.     A district court may certify an interlocutory appeal if its order involves:

> [(1)] a controlling question of law [(2)] as to which there is a substantial ground for difference of opinion and [(3)] that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

28 U.S.C. § 1292(b). "Section 1292(b) appeals are exceptional." *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983).

4.     Under Section 1292(b), this Court "may . . . , in its discretion, permit an appeal" if a petition is filed with the Court "within ten days after the entry of the order." 28 U.S.C. § 1292(b). Federal Rule of Appellate Procedure 5 governs the procedure for requesting a permissive appeal. *Aucoin v. Matador Servs., Inc.*, 749 F.2d 1180, 1181 (5th Cir. 1985). Under Rule 5, the petition must include "(A) the facts necessary to understand the question presented; (B) the question itself; (C) the relief sought; (D) the reasons why the appeal should be allowed and is authorized by a statute or rule; and (E) an attached copy of [the appealed order and the district court's permission to appeal]." Fed. R. App. P. 5(b).

## ARGUMENT

5.     To consider an appeal, this Court must have jurisdiction. *Aucoin*, 749 F.2d at 1181. An order partially dismissing a case is not appealable as a matter of right. *Albatross Shipping Corp. v. Stewart*, 326 F.2d 208, 210 (5th Cir. 1964). It is an interlocutory order, *id.*, and does not finally dispose of all claims and parties. 28 U.S.C. § 1291. Because a partial dismissal is not immediately appealable generally, *id.* § 1292(a), the only possible basis for jurisdiction is Section 1292(b). *Id.* § 1292(b).

6.     Section 1292(b) has multiple requirements. It requires the appellant to file a Rule 5 petition with this Court within ten days. *Id.* Additionally, the appellant must acquire the district court's permission to appeal. *Id.* Failure to meet either of these requirements deprives this Court of jurisdiction. *Aucoin*, 749 F.2d at 1181. Plaintiffs' appeal fails in both respects.

7.     Plaintiffs' deadline to file a Rule 5 petition was ten days after the district court's August 6, 2024 order – that is, August 16, 2024. 28 U.S.C. § 1292(b); *see also* Exh. A at 30. Plaintiffs appealed after that deadline. Exh. B at 1; Exh. C at 1. To date, Plaintiffs have not filed a Rule 5 petition.

8.     The notice of appeal filed in this Court satisfies none of Rule 5's requirements. Fed. R. App. P. 5(b). It contains no questions presented or supporting facts. *Id.* 5(b)(1)(A)–(B). It requests no relief. *Id.* 5(b)(1)(C). It doesn't state why the appeal should be allowed or how it is authorized. *Id.* 5(b)(1)(D). It doesn't attach the appealed order. *Id.* 5(b)(1)(E). And it doesn't attach the district court's authorization to appeal, which would be impossible to do as the district court expressly declined to certify its order for immediate appeal. *Id.*; *see also* Exh. D at 1. Even if Plaintiffs had filed the amended notice of appeal in this Court, which they did not, it would also be insufficient. Exh. D at 4–5 n.1 (explaining the amended notice "designates the race-related claims for appeal [but] does not include the facts and legal authority required by Rule 5").

9.     "[I]n the absence of a timely request for a permissive appeal under Fed. R. App. P. 5(a), [this Court] lack[s] jurisdiction to consider granting a discretionary appeal." *Aucoin*, 749 F.2d at 1181 (citing *Aparicio v. Swan Lake*, 643 F.2d 1109, 1111 (5th Cir. 1981)). A "notice of appeal filed in the district court and without a statement of the basis for a discretionary appeal is not an adequate request under Rule 5." *Id.* And an interlocutory order that does not fall under one of Section 1292(a)'s

categories "unappealable unless the district court certifies the issue." *Pannagl v. Certain Underwriters at Lloyds, London*, 2018 WL 6720552, at *1 (5th Cir. Oct. 24, 2018) (citing *Aaron v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.2d 1157, 1160 (5th Cir. 1989)).

10.    This Court lacks jurisdiction over the appeal. *See, e.g.*, Exh. D at 5 (citations omitted). Indeed, this Court consistently dismisses similar appeals for lack of jurisdiction. *E.g.*, *Fridge v. City of Marksville*, 2022 WL 19765447, at *1 (5th Cir. Dec. 1, 2022) (dismissing appeal in the same circumstances, even when the district court certified its order for an immediate appeal); *Poe v. Fuller*, 2020 WL 2530211, at *1 (5th Cir. Jan. 15, 2020) (same); *Scott v. Ruston La. Hosp. Co.*, 2017 WL 4764469, at *1 (5th Cir. Aug. 16, 2017) (same).

11.    As Plaintiffs never filed a Rule 5 petition and the district court declined to certify its interlocutory order for immediate appeal, this Court lacks jurisdiction. This appeal warrants the same outcome as those cases outlined above: dismissal.

## CONCLUSION

12.    The Court lacks jurisdiction over this appeal. While this case may properly come before the Court in due course, an immediate appeal

is improper and improvident. The Court must dismiss this appeal for lack

of jurisdiction.

Respectfully submitted,

ROGERS, MORRIS & GROVER, L.L.P.

/s/ Jonathan Griffin Brush

_____

JONATHAN GRIFFIN BRUSH
State Bar No. 24045576
jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
ademmler@rmgllp.com
RICHARD A. MORRIS
State Bar No. 14497750
rmorris@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone: 713/960-6000
Facsimile: 713/960-6025

*Attorneys for Defendants-Appellees Barbers*
*Hill Independent School District, Greg Poole,*
*Lance Murphy, and Ryan Rodriguez*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel conferred in good faith *via* email with counsel for Plaintiffs-Appellants on or about October 9, 2024. Plaintiffs-Appellants are opposed to the motion and the relief it requests.

/s/ Jonathan Griffin Brush

_____

*Attorney for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

I further certify that (1) the required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Jonathan Griffin Brush

_____

*Attorney for Defendants-Appellees*

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to FED. R. APP. P. 27 and Local Rule 27.4, the undersigned certifies that this Motion complies with the limitations of FED. R. APP. P. 27 and contains **1,047 words** excluding Appellant's Certificates of Conference, Service, and Compliance, prepared in a proportionally spaced typeface using Microsoft Office Word 2024 in 14 point Century font in text and 12 point Century font in footnotes.

The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 27 may result in the Court's striking the Motion and imposing sanctions against the person signing the Motion.


/s/ Jonathan Griffin Brush

_____

*Attorney for Defendants-Appellees*

# EXHIBIT A

United States District Court
Southern District of Texas
**ENTERED**
August 06, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

---

No. 3:24-cv-12

---

DARRYL GEORGE, *ET AL.*, *PLAINTIFFS*,

v.

GREG ABBOTT, *ET AL.*, *DEFENDANTS*.

---

## MEMORANDUM OPINION AND ORDER

---

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

There are three motions before the court: a motion to invoke § 101.106(e) of the Texas Civil Practice and Remedies Code, and two motions to dismiss. Dkts. 55, 56, 60. The court will grant the motion to invoke § 101.106(e) and one of the motions to dismiss, Dkts. 55, 60, and will grant in part and deny in part the remaining motion to dismiss, Dkt. 56.

## I.    Background

Darryl George ("George") has been in in-school suspension ("ISS") since August because his hair violates the school's dress and grooming policy. The policy provides, in relevant part:

> Male students' hair will not extend, at any time, below the
> eyebrows, or below the ear lobes when let down. Male students'
> hair must not extend below the top of a t-shirt collar or be
> gathered or worn in a style that would allow the hair to extend
> below the top of a t-shirt collar, below the eyebrows, or below the
> ear lobes when let down.

Dkt. 54 ¶ 23. George's dreadlocks ("locs"), when let down, would extend "below the top of a t-shirt collar, below the eyebrows, or below the ear lobes."

George and his mother, Darresha (collectively, "the plaintiffs"), sued Barbers Hill Independent School District ("BHISD") and three individuals employed by BHISD (collectively, "the District"), Governor Greg Abbott, and Attorney General Ken Paxton. The plaintiffs assert various claims under § 1983, Title VI, Title IX, and state law.[1]

The District first moved to invoke § 101.106(e) of the Texas Civil Practice and Remedies Code, Dkt. 55, followed by a motion to dismiss the plaintiffs' remaining claims under Rule 12(b)(1) and (6), Dkt. 56. Governor Abbott and Attorney General Paxton (collectively, "the State Defendants") also moved to dismiss the plaintiffs' claims under Rule 12(b)(1) and (6). Dkt. 60.

---

[1] Darresha George brings only state-law claims. For internal consistency, however, the court will refer collectively to "the plaintiffs" when discussing all claims.

## II.    Legal Standards

### A. 12(b)(1)

A court should grant a motion to dismiss for lack of subject-matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). "[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. Const. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

To test whether the party asserting jurisdiction has met its burden, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts." *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). "When standing is challenged on the basis of the pleadings, [a court] must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (cleaned up).

### B. 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* In reviewing the pleadings, a court accepts all well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "[c]onclusory allegations, unwarranted factual inference, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## C. Section 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the constitution or laws of the United States. "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). A complaint under Section 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 826 (1994). A claim under Section 1983 may be brought against government employees in their individual or official capacities or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

### 1. *Monell* Liability

Establishing municipal liability under Section 1983, commonly called *Monell* liability, requires proof of three elements: (1) an official policy or custom (2) that a municipal policymaker promulgated (3) and that was the "moving force" behind the violation of a constitutional right. *Webb v. Town*

*of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019); *Piotrowski v. City of Houston* ("*Piotrowski II*"), 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). *Monell* liability cannot be predicated on *respondeat superior. Piotrowski II*, 237 F.3d at 578. Instead, "it is when the execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Therefore, "isolated unconstitutional actions by municipal employees will almost never trigger [*Monell*] liability." *Piotrowski II*, 237 F.3d at 578 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)); *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989).

## III. Analysis

### A. Motion to Invoke § 101.106(e)

The District first moves to dismiss the plaintiffs' state law tort claims against the individual employees—Greg Poole (superintendent of the District), Lance Murphy (principal of Barbers Hill High School), and Ryan Rodriguez (assistant principal of Barbers Hill High School)—pursuant to the Election of Remedies provision of the Texas Tort Claims Act ("TTCA"). Dkt. 55. The court will grant the motion.

The provision's relevant sections provide:

(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

Tex. Civ. Prac. & Rem. Code § 101.106(a), (e).

Because the plaintiffs elected to sue the District and the individual employees for the same subject matter, the court dismisses the plaintiffs' state law tort claims against the individual employees.

## B. The State Defendants' Motion to Dismiss

The State Defendants move to dismiss the plaintiffs' claims for a variety of reasons: (1) the plaintiffs lack standing to sue; (2) the plaintiffs' federal claims against the State Defendants in their official capacities are barred by the doctrine of sovereign immunity; (3) the plaintiffs' federal claims against the State Defendants in their individual capacities are barred by the doctrine of qualified immunity; and (4) the plaintiffs' state law claims are barred by the TTCA. Dkt. 60 at 7–8.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions," as is the case here, "the court should consider the Rule 12(b)(1) jurisdictional challenge before addressing any attack on the merits" of the

case. *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013). Therefore, the court begins its analysis with standing.

The "irreducible constitutional minimum of standing contains three elements": (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted) (alterations in original).

The State Defendants argue: (1) the plaintiffs do not plausibly allege an injury-in-fact traceable to any allegedly unlawful act by Governor Abbott or General Paxton and (2) the plaintiffs' alleged injuries will not and cannot be redressed by the State Defendants upon a favorable decision by this court. Dkt. 60 at 7–8. The court agrees. The plaintiffs' alleged injuries result entirely from the actions of the District. In fact, the plaintiffs "have wholly failed to establish that Governor Abbott and General Paxton were even aware

of [the p]laintiffs' existence prior to the filing of the present lawsuit." *Id.* at 18. No injunctive relief against the State Defendants would redress any of the alleged injuries.

Because the court finds that the plaintiffs lack standing for these claims, the court does not need to analyze the State Defendants' other reasons for dismissal. The plaintiffs' claims against the State Defendants are dismissed.

### C. The District's Motion to Dismiss

The District moves to dismiss the plaintiffs' claims in their entirety. The court will address each claim in turn.

### 1. Individual Employees

The court begins with the claims against the individual employees—Poole, Murphy, and Rodriguez. The District argues that qualified immunity bars these claims. Dkt. 56 at 36–37. The court agrees.

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). "This immunity protects all but the plainly incompetent or those who knowingly violate the law, so we do not deny immunity unless existing precedent must have placed the statutory or constitutional question *beyond*

*debate.*" *Id.* at 371 (internal quotation marks and citations omitted). A "plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks and citations omitted).

To show that the right was "clearly established" at the time of the challenged conduct, the plaintiffs assert that "discrimination laws are well-settled." Dkt. 62 at 22–23. This conclusory statement is not enough. The plaintiffs fail to cite to any Fifth Circuit or Supreme Court authority that clearly establishes that George has a legal right to wear his hair in a particular style or that the District's policy undoubtedly violates an anti-discrimination law. Further, the plaintiffs make no effort to distinguish the individual defendants' alleged unconstitutional conduct from the behavior of the other defendants. The plaintiffs merely respond by alleging that "the facts tell you exactly who did what and exactly what they did." *Id.* at 22.

Because the court finds that the individual employees are entitled to qualified immunity as to all federal claims, these claims are dismissed.[2]

---

[2] The plaintiffs' state-law claims against the individual defendants are also dismissed pursuant to the District's invocation of § 101.106(e) of the Texas Civil Practice and Remedies Code. *See* III.A *supra*.

## 2. Equal Protection

The plaintiffs allege two Equal Protection claims: (1) sex discrimination and (2) race discrimination.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To establish an equal protection claim, [the plaintiff] must first show that 'two or more classifications of similarly situated persons were treated differently.'" *Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 353 (5th Cir. 2017) (quoting *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012)). "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply." *Id.*

### a. Sex Discrimination

The pivotal question underlying the plaintiffs' sex-discrimination claim is the application of a 1972 Fifth Circuit opinion, *Karr v. Schmidt*, and *Karr*'s influence on the appropriate level of scrutiny to apply. 460 F.2d 609 (5th Cir. 1972). The District argues that *Karr* forecloses this court's review and dictates that the claim need only survive rational-basis review. Dkt. 56

at 19–20. The plaintiffs, on the other hand, argue that *Karr* is not applicable and that the claim should be analyzed under intermediate scrutiny. Dkt. 62 at 8–9.

In *Karr*, the Fifth Circuit examined whether there is "a constitutionally protected right to wear one's hair in a public high school in the length and style that suits the wearer" and concluded that there is "no such right [] to be found within the plain meaning of the Constitution." 460 F.2d at 613. The court reasoned that because the classification was "not based on the 'suspect' criterion of race or wealth which would require application of the 'rigorous' standard of equal protection scrutiny," the classification met the rational-basis standard of review and was valid. *Id.* at 616. Based on "the very minimal standard of judicial review to which these [hair-length] regulations are properly subject in the federal forum," the court "announce[d] a per se rule that such regulations are constitutionally valid." *Id.* at 617.

Admittedly, the facts of this case are similar to those in *Karr*. But the court agrees with the plaintiffs: *Karr* does not foreclose this court's review. First, *Karr* did not involve a constitutional sex-discrimination claim or any other claim requiring heightened scrutiny; the court, therefore, applied rational-basis review. While the low threshold of review lent itself well to the court's establishment of its *per se* rule in that case, *Karr*'s *per se* rule is

inapplicable here precisely because this case involves a constitutional sex-discrimination claim that requires a heightened standard of review.

In fact, *Karr* addressed this exact difference. *Karr* distinguished a Seventh Circuit case where the court held that hair regulations specific to male students "are violative of the Equal Protection clause because they apply solely to male students and not to female students" and stated that "under the rule we announce today, federal courts would still be permitted to entertain an action alleging discriminatory enforcement of a grooming code." *Id.* at 616, 617 n.26. That distinction is exactly what the plaintiffs allege in this case.

Second, because *Karr* was decided in 1972, it predates the long-standing precedent that all sex-based classifications are afforded heightened scrutiny. At best, *Karr* was decided at a time when determining whether to treat sex as a quasi-suspect class was in flux. While "case law evolving since 1971 reveals a strong presumption that gender classifications are invalid," *United States v. Virginia*, 518 U.S. 515, 532 (1996) (internal quotation marks and citations omitted), the Supreme Court remarked that it was not until 1976, in *Craig v. Boren*, when it "announced that '[t]o withstand constitutional challenge, . . . classifications by gender must serve important governmental objectives and must be substantially related to achievement of

those objectives.'" *Id.* at 558 (Rehnquist, C.J., concurring) (quoting *Craig v. Boren*, 429 U.S. 190, 197 (1976)). The Court "ha[s] adhered to that standard of scrutiny ever since." *Id.* That pronouncement came four years after *Karr* was decided.

The court acknowledges the District's argument that "[c]onstitutional jurisprudence is very different in the school context." Dkt. 74 at 17, lines 13–19 (Hearing Transcript). But there is nothing to suggest that this unique context changes the applicable standard. To the contrary, the Supreme Court recently reiterated that "heightened scrutiny . . . attends '*all* gender-based classifications'"—not merely classifications outside of the school context. *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (quoting *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 136 (1994) (emphasis added)).

Because the court finds that *Karr* does not foreclose judicial review and that intermediate scrutiny is the appropriate standard to apply, it now turns to the District's stated rationales for the policy. The District argues that "even if a heightened standard of review did apply, [it] easily meets it," because its "dress code—which includes the hair-length restriction for male students—is established to teach grooming and hygiene, instill discipline, maintain a safe and positive learning environment, prevent disruption, avoid safety hazards, and teach respect for authority." Dkt. 56 at 20 (internal quotation

marks and citations omitted). While those reasons may provide insight for the District's motivation to have a dress code, they provide no support for the narrower question that forms the basis of this claim: what is the rationale for the dress code's distinction between male and female students?

Because the District does not provide any reason for the sex-based distinctions in its dress code, the claim survives this initial stage.

### b. Race Discrimination

The District argues that this claim must be dismissed because the plaintiffs (1) fail to establish that George's constitutional right to be free from racial discrimination was violated by an official policy and (2) "fail[] to attribute any of the actions he complains of to any Board member." Dkt. 56 at 22.

In the briefing, the plaintiffs concede that the District's hair-length restriction is facially race-neutral.[3] Dkt. 62 at 11. Therefore, to prevail on this

---

[3] At the hearing, however, counsel for the plaintiffs argued that the court is "looking at a case where [it] ha[s] a grooming and dress code that is not facially neutral. [The District] argue[s] it's facially neutral. It appears to be facially neutral. . . . It's couched as facially neutral; but if you get up in there, it's not. . . . When we start talking about the length requirement we're not on the right track. . . . It's not facially neutral. And that's an argument for another day, but legally [the court] can decide that." Dkt. 74 at 22, lines 1–6; 23, lines 20–25; 24, lines 10–12 (Hearing Transcript). The plaintiffs' counsel continues that "[i]t's not facially neutral" but "[i]t does take a little bit of application. . . . We do need to look at . . . how they apply it." *Id.* at 24, lines 10–14. If the court needs to look at the

claim, they must plead that the policy is being applied in a disparate manner. To meet this pleading requirement, the plaintiffs must establish *Monell* liability and "show that his constitutional rights were violated as a result of the [District]'s official policy." *Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992). The plaintiffs have not done so.

"Official policy is ordinarily contained in duly promulgated policy statements, ordinances[,] or regulations. But a policy may also be evidenced by custom" which is shown by "a persistent, widespread practice of [District] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [District] policy." *Piotrowski II*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). The pattern of prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to [the Board] of knowledge that the objectionable conduct is the expected, accepted practice of [District employees]." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Webster*, 735 F.2d at 842).

---

policy's *application*—in other words, as applied—it is—by definition—facially neutral.

The court agrees with the District—the plaintiffs have not shown a persistent, widespread practice of disparate, race-based enforcement of the policy at issue.[4] At most, the plaintiffs allege only two instances: the allegations underlying George's case and those underlying the *Arnold* case also pending in this court. *Arnold v. Barbers Hill Indep. Sch. Dist.*, [4:20-cv-1802] (Hanks, J.). But these two instances alone are insufficient to establish a pattern of conduct going on "for so long or so frequently" that it evinces a "persistent, widespread practice." *Piotrowski II*, 237 F.3d at 579.

The plaintiffs state in their response that the "inequitable enforcement of the policy against those with protective styles is direct insight to the fact that BHISD *means* to racially discriminate against those who [don] protective styles." Dkt. 62 at 11 (emphasis in original). But without more, such an allegation is inadequate. The only alleged evidence of disparate, race-based treatment comes from a series of conclusory statements, including that: (1) George was singled out for his locs, "despite the hair[-

---

[4] In their response, the plaintiffs argue that "it is not until the summary[-]judgment stage," after discovery, "that [they] must show a substantial pattern of incidents" and state that the court must wait until after discovery to determine if the plaintiffs can prove their claims. Dkt. 62 at 19. This is incorrect. While the plaintiffs are not required to prove their claims at this stage, they must still plead facts sufficient to meet all the required elements—one of which is a course of conduct demonstrating an expected, accepted practice.

]length requirement being [the District's] pretextual reason," for putting him in ISS; (2) the District has "only enacted and[/]or applied [its] hair[-]length grooming policy to black males and/or black males with locs, braids, twists, or protective hairstyles" because its "policy was only made to discriminate and/or be applied to black males and/or black males with locs, braids, twists[,] and protective hairstyles;" and (3) "several non-black male students have come forward and have been seen with hair that is against the dress and grooming code and these males have not been disciplined or accosted" by the District. Dkt. 54 ¶¶ 25, 33. These conclusory allegations are insufficient to support a claim of intentional race discrimination.[5]

The plaintiffs have failed to establish *Monell* liability. As the District points out, the plaintiffs' response is devoid of any argument responding to the lack of *Monell* analysis—specifically, that George's constitutional right to be free from racial discrimination was violated by an official policy directly

---

[5] Again, the plaintiffs allege in their response that the court "must wait until discovery before being able to determine whether or not" this is a viable claim. Dkt. 62 at 18. They continue: "The statistics surrounding the punishment of students as it relates to the hair[-]length policy and staggering effect of the implementation of the hair[-]length policy has on blacks will prove the discrimination; but [the p]laintiff[s] only needed to plead it and do[] not need to prove it yet." *Id.* The plaintiffs are correct that the facts do not need to be proven yet. But to obtain further discovery, the plaintiffs must get past this initial stage which requires the pleading of facts sufficient to state a plausible claim—not just conclusions.

attributable to the District's Board of Trustees and not mere actions by individual employees.[6] Dkt. 64 at 16. That is fatal to the plaintiffs' racial-discrimination claim. The plaintiffs focus only on the actions of individual BHISD employees—which is the kind of *respondeat superior* liability that *Monell* explicitly prohibits: "Liability under 42 U.S.C. § 1983 may not be imposed on a government entity on a theory of respondeat superior for the actions of government employees." *Johnson*, 958 F.2d at 93 (citing *Monell*, 436 U.S. at 690–94).

For these reasons, the plaintiffs' Equal Protection race-discrimination claim is dismissed.

---

[6] The plaintiffs attempt to respond, stating that they "clearly ple[a]d[ed] that the dress and grooming code was an official policy of [the District] and do[] not need to plead anything regarding 'the board of trustees.'" Dkt. 62 at 18. But this is incorrect. "[T]o sustain liability under § 1983, the [plaintiffs] must point to more than the actions of a [B]HISD employee, they must identify a policymaker with final policymaking authority and a policy that is the 'moving force' behind the alleged constitutional violation." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). "Texas law unequivocally delegates to the Board 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'" *Id.* (citing Tex. Educ. Code § 11.151(b)). The only facts that the plaintiffs assert against the Board are that it enacted a facially race-neutral policy. The District is right—"the existence of a facially race-neutral policy simply cannot be the moving force of a constitutional inquiry." Dkt. 56 at 23.

### 3. Due Process

The plaintiffs allege a due-process claim in relation to three events: (1) George's removal to ISS, or other alternative learning placement; (2) the District's alleged "stalling" in providing him a Level III grievance appeal; and (3) the District's failure to timely process his requests for educational records. Dkt. 54 ¶¶ 32, 35–37, 46.

"To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs must show that they have asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived on that interest, even temporarily, under color of state law." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (internal quotation marks and citation omitted).

The plaintiffs have not made such a showing. Transferring a student to an alternative learning placement, including ISS or the District's Alternative Education Program, does not deprive George of any property or liberty interest. *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26–27 (5th Cir. 1997). Similarly, the due-process claim premised on the District's alleged "stalling" in providing George a Level III grievance appeal fails for the same reason—there is no substantive or procedural due-process right to

20/30

such a hearing.[7] Finally, the due-process claim based on the District's alleged "stalling and refus[al] to issue a date for [George's] educational records challenge hearing," Dkt. 54 ¶ 37, fails for multiple reasons. First, the plaintiffs do not identify what is being challenged in George's educational records. Second—and perhaps more importantly—the Federal Educational Rights and Privacy Act, which governs educational records, does not create a private right of action.[8] *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).

As a result, the plaintiffs' due-process claim fails as to all three alleged events.

### 4. Federal Abridgment of Bodily Integrity

The District argues that no such claim exists. Dkt. 56 at 28. The plaintiffs do not provide any response or clarification.[9] A failure to respond

---

[7] The plaintiffs do not substantively respond to this argument. They simply state that the District "den[ied George] due process because [it] refuse[d] to allow him an exemption for race in the same way that [it] allow[s] exemptions for religion." Dkt. 62 at 20. Confusingly, the plaintiffs go on to state: "[t]o date, [the d]efendant has not been given a level three grievance hearing. That is why he complains." *Id*. The court assumes that "the [d]efendant" is actually a reference to the *plaintiff*—George. But even making that leap, however, does not save this claim from the plaintiffs' conclusory argument.

[8] The plaintiffs fail to provide any response to this argument.

[9] In fact, if anything, the plaintiffs create further confusion. In the complaint, the plaintiffs allege this claim under the Fourteenth Amendment. Dkt. 54 ¶ 51. However, in their response, the plaintiffs lump this claim in with their First Amendment claim, titling the section: "1st Amendment Claim/Federal Abridgment

will be taken as a representation of no opposition. S.D. Tex. Local R. 7.4. The court dismisses this claim.

### 5. First Amendment

The District moves to dismiss this claim, arguing that "[h]air length and style don't objectively communicate any message enjoying First Amendment protection." Dkt. 56 at 29. Tellingly, when the court directly asked the plaintiffs' counsel to "point . . . to any case law holding that . . . hair length is protected as expressive conduct under the First Amendment," she replied: "I cannot." Dkt. 74 at 26, lines 18–25 (Hearing Transcript).

Instead, counsel argued that this is a "case of first precedence with respect to this" and asked the court to "reassess it and to look at it and to see if it will apply in this particular instance."[10] *Id.* at 27, lines 2–9, 13–14. While the court appreciates counsel's candor, it declines to do so in this case. The court acknowledges that the plaintiffs pleaded that George's locs are "an outward expression of his Black identity and culture." Dkt. 54 ¶ 32. But as the Supreme Court advised: "[w]e cannot accept the view that an apparently

---

Claim." Dkt. 62 at 20. Apart from mentioning the name of this novel claim in a title, however, the plaintiffs do not provide any discussion or reference to this claim.

[10] In the briefing, the plaintiffs request the court to wait until after discovery to dismiss this claim. Dkt. 62 at 21. The court declines that request.

limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brian*, 391 U.S. 367, 376 (1968).

Further, this claim fails for an alternative reason: yet again, the plaintiffs fail to establish *Monell* liability. In its motion to dismiss, the District argues that the plaintiffs fail to plead that the Board had actual or constructive knowledge of any policy or pattern of similar violations of "highly similar violations of Black students' constitutional rights to express themselves through the length or style of their hair." Dkt. 56 at 30. The plaintiffs do not address this argument in their response. And again, a failure to respond will be taken as a representation of no opposition. S.D. Tex. Local R. 7.4. The First Amendment claim is dismissed.

### 6. Statutory Claims

The plaintiffs also bring claims under Title VI and Title IX requesting compensatory damages and injunctive and declaratory relief. Dkt. 54 at 13–14. These claims fail.

Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C § 2000d. Title IX

provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[11] 20 U.S.C. § 1681(a).

First, mental-anguish damages are not recoverable under statutes that were enacted pursuant to the Spending Clause—such as Title VI or Title IX. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 217–30 (2022). Therefore, to the extent that the plaintiffs bring claims for mental-anguish damages under these two statutes, such relief is not permitted.

Second, to receive compensatory damages with respect to the Title VI claim, the plaintiffs needed to plead conduct indicative of intentional racial discrimination.[12] *Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393, 397 (5th

---

[11] The District also argues that Title IX does not protect or apply to hair length. Dkt. 56 at 33. As the District notes in its reply, the plaintiffs fail to substantively respond to this argument. Dkt. 64 at 15–16.

[12] The plaintiffs also attempt to bring a Title VI claim on a theory of disparate impact, alleging that the defendants' "conduct as alleged . . . constitute[s] the promotion of disparate impact (also called adverse impact) discrimination under Title VI" because the District "adopted a procedure or engaged in a practice that has a disproportionate, adverse impact on individuals who are distinguishable based on their race[] and sex—even if [the District] did not intend to discriminate." Dkt. 54 ¶ 43. That claim fails as a matter of law. "[T]o receive compensatory damages, a Title VI plaintiff must prove discriminatory *intent*," not mere impact. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (emphasis added).

Cir. 1996). They did not do so. The plaintiffs pleaded only conclusory allegations and the existence of a facially race-neutral policy. In fact, they affirmatively pleaded that the District may not have intended to discriminate, stating the District "adopted a procedure or engaged in a practice that has a disproportionate, adverse impact on individuals who are distinguishable based on their race[] and sex—*even if* [the District] did not intend to discriminate." Dkt. 54 ¶ 43 (emphasis added). This statement negates any assertion of *intentional* race discrimination.

Finally, the plaintiffs' request for injunctive and declaratory relief under Title VI or Title IX fails for the reasons discussed below. *See* III.C.8 *infra*. The court dismisses these statutory claims.

### 7. State-Law Claims

The District argues that it is immune from the plaintiffs' state-law claims because of governmental immunity. Dkt. 56 at 39–42. The court agrees.

As a matter of law, a Texas independent school district is a local government entity. Tex. Educ. Code §§ 11.051–11.152. "To assert a state[-]law claim against a governmental entity, a plaintiff bears the burden to plead and affirmatively demonstrate the court's subject[-]matter jurisdiction by alleging a valid waiver of governmental immunity." Dkt. 56 at 39 (citing *Tex.*

*Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). "The party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission." *Jones*, 8 S.W.3d at 638.

### a. Tort Claims

As to the plaintiffs' state law tort claims, including breach of fiduciary duty, harassment, intentional infliction of emotional distress, and "bystander liability/failure to intervene," the only waiver of immunity comes from the TTCA. Tex. Civ. Prac. & Rem. Code § 101. The TTCA's narrow waiver provides that a school district can be held liable only for personal injury, death, and property damage when (1) the injuries or damages are caused by the negligence of a school district employee while acting within the scope of his employment, and (2) the injury or damages arise from the operation or use of a motor vehicle. Tex. Civ. Prac. & Rem. Code §§101.021, 101.051. Because none of the plaintiffs' claims relate to the operation or use of a motor vehicle, the tort claims against the District are barred by governmental immunity.

### b. Breach-of-Contract Claim

As to the breach-of-contract claim, the plaintiffs argue that "the district entered into a contract with their rules and regulations [and] student code of

26/30

conduct" and the District's "failure to abide by that contract avails them to liability." Dkt. 62 at 24. The court disagrees.

The plaintiffs have not alleged anything to show that the relationship between a public school district and its students is contractual in nature. In fact, as the District points out, the student handbook expressly denies such a relationship, providing: "the Student Handbook may refer to rights established through law or district policy," but "[i]t does not, nor is it intended to, represent a contract between any parent or student and the district." Dkt. 56 at 41–42 (quoting Barbers Hill ISD Student Handbook, https://resources.finalsite.net/images/v1690925359/bhisd/icmlj9jpauwzw kznqohu/StudentHandbook-BHISD.pdf (last visited Aug. 5, 2024)). Even if the plaintiffs had established a contractual relationship, however, they nonetheless fail to plead any waiver of immunity.

For the reasons stated above, the court dismisses the plaintiffs' state-law claims against the District.

### 8. Declaratory and Injunctive Relief

"When considering a declaratory judgment action, a district court must engage in a three-step inquiry. First, the court must determine whether the declaratory action is justiciable." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891,

895 (5th Cir. 2000). "Typically, this becomes a question of whether an 'actual controversy' exists between the parties to the action." *Id.*

The District argues that the plaintiffs have failed to establish an "actual controversy" as to their federal- and state-law claims. Dkt. 56 at 42. The plaintiffs provide no meaningful response, instead referring to other parties in other cases in a nonsensical manner. Dkt. 62 at 25–26 (discussing a "temporary restraining order signed by the trial court" that "grants J.C. all the relief he has requested" and an individual named "Meroney" who is "seeking to enjoin allegedly unauthorized actions of a [c]ity official").

Without any other bases on which to determine an actual controversy, the court denies the plaintiffs' request for declaratory and injunctive relief.

### 9. Punitive Damages

The District argues that as a matter of law, punitive damages are not recoverable from governmental entities. Dkt. 56 at 42 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). The plaintiffs do not respond to this argument. The request for punitive damages is denied.

## IV.  Amendment

Finally, in their response to the State Defendants' motion to dismiss, the plaintiffs "move the court to be able to amend their pleadings." Dkt. 65 at 2. The court denies that request.

Leave to amend shall be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has held that courts should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). "[T]the decision to grant or to deny a motion for leave to amend lies within the sound discretion of the trial court." *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). And in exercising that discretion, "the trial court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, (and) futility of the amendment." *Id.* (internal quotation marks and citations omitted) (alteration in original).

The plaintiffs have had several chances to amend their complaint—five to be exact. Because of their "repeated failure to cure deficiencies," the court declines the plaintiffs' request to file a *sixth* amended complaint.

\*     \*     \*

As the district court in *Karr* concluded: "the presence and enforcement of the hair-cut rule causes far more disruption of the classroom instructional

29/30

process than the hair it seeks to prohibit." *Karr*, 460 F.2d at 613. Regrettably, so too here. "Justice Scalia once said that he wished all federal judges were given a stamp that read 'stupid but constitutional.' As he was implying, not everything that is undesirable, annoying, or even harmful amounts to a violation of the law, much less a constitutional problem." *Brown v. Chi. Bd. of Educ.*, 824 F.3d 713, 714 (7th Cir. 2016) (citation omitted). Like the Seventh Circuit concluded in *Brown*, "[t]oday's case provides another illustration of that fact." *Id.*

For the foregoing reasons, the court grants the District's motion to invoke § 101.106(e) and the State Defendants' motion to dismiss. Dkts. 55, 60. The court denies the District's motion to dismiss as to the plaintiffs' Equal Protection sex-discrimination claim, but grants the motion with respect to all other claims. Dkt. 56.

Signed on Galveston Island this 6th day of August, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| DARRYL GEORGE, et al, | § | |
|   Plaintiffs, | § | |
|     V. | § | **3:24 cv 00012** |
| | §_____ | |
| GREG ABBOTT, et al. | § | **Jury Trial Demanded** |
|   Defendants. | § | |

---

## PLAINTIFFS' NOTICE OF INTERLOCUTORY APPEAL

Notice is hereby given that Plaintiffs', Plaintiffs in the above named case, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the judgment granting the Defendants' Motion to Dismiss entered in this action on the 6th Day of August, 2024.

Respectfully submitted,

The Booker Law Firm
1200 Rothwell Street
Houston, Texas 77002
T: 713-292-2225
F: 713-583-3995

**By: _/s/Allie Booker_**
Allie R. Booker SBN:
24071071
FBN: 1089873
booker@bookerlawfirm.com
LEAD COUNSEL

Law Office of Joseph K. Plumbar 1200
Rothwell Street
Houston, Texas 77002
T: 713-384-5507
F: 866-252-3048

**By:** */s/Joseph K. Plumbar*

Joseph K. Plumbar SBN:
24062331
FBN: 1493814
jplumbar@plumbarlaw.com
CO-COUNSEL

### NOTICE OF ELECTRONIC FILING

I, Allie Booker, Plaintiffs' Attorney, do hereby certify that I have electronically submitted for filing,

a true and correct copy of the above in accordance with the Electronic Case Files System of the

Southern Texas, on this the 21ST day of August, 2024.

*/s/Allie Booker*
Allie Booker

### CERTIFICATE OF SERVICE

I, Allie Booker, Plaintiffs' Attorney, do hereby certify that I have forwarded a true and correct copy

of the above, to all parties in this case, in accordance with The Federal Rules of Civil Procedure, on

this on this the 21ST day of August, 2024.

*/s/Allie Booker*
Allie Booker

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **DARRYL GEORGE, et al,** | § | |
| **Plaintiffs,** | § | |
| **V.** | § | **3:24 cv 00012** |
| | § | |
| **GREG ABBOTT, et al.** | § | **Jury Trial Demanded** |
| **Defendants.** | § | |

## PLAINTIFFS' AMENDED NOTICE AND MOTION FOR PERMISSION TO CERTIFY A RULING FOR INTERLOCUTORY APPEAL

NOW COMES Plaintiff, Darryl George, in the above-captioned case, hereby requesting an interlocutory appeal to the United States Court of Appeals for the Fifth Circuit from the judgment granting the Defendants' Motion to Dismiss in part, specifically as to the Constitutional race claims (i.e., direct racial discrimination and disparate impact discrimination). In support thereof, Plaintiff states the following:

## I.      STAGE OF THE CASE

Plaintiff Darryl George initiated a race discrimination action based on disparate impact, as well as a direct discrimination claim, pursuant to Title VI of the Civil Rights Act of 1964 and THE CROWN ACT, against all Defendants. He also brought a gender discrimination equal protection claim, a First Amendment claim, and various state tort claims against all Defendants. Additionally, his mother, Darresha George, brought an Intentional Infliction of Emotional Distress (IIED) claim against all Defendants. The Defendants moved to dismiss all claims.

On August 6, 2024, the Court dismissed all claims except for the gender discrimination equal protection claim against Barbers Hill Independent School District (BHISD). On August 21, 2024, Plaintiff filed for an interlocutory appeal. On August 26, 2024, Plaintiff submitted this amended request for certification of said appeal.

## II.     ARGUMENT IN SUPPORT

Under 28 U.S.C. § 1292(b), a district judge may, under specific circumstances, certify an

issue for interlocutory appeal. The statute provides in part:

"When a district judge, in making in a civil action an order not otherwise appealable under this

section, shall be of the opinion that such order involves a controlling question of law as to which

there is substantial ground for difference of opinion and that an immediate appeal from the order

may materially advance the ultimate termination of the litigation, he shall so state in writing in such

order," 28 U.S.C. § 1292(b).

Plaintiff asserts that all three criteria under § 1292(b) are satisfied in this case, justifying the

certification of the interlocutory appeal to the Fifth Circuit Court of Appeals:

1. **Controlling Question of Law**: The Court's order involves a controlling question of law
   concerning the application of Title VI and the CROWN ACT to claims of racial
   discrimination.

2. **Substantial Ground for Difference of Opinion**: There exists a substantial ground for
   difference of opinion regarding the legal questions raised, particularly in relation to the
   interpretation and application of the statutes in question.

3. **Material Advancement of Litigation**: An immediate appeal may materially advance the
   ultimate termination of the litigation by potentially resolving key issues that could otherwise
   prolong the case.

While interlocutory appeals are generally disfavored, this case presents the exceptional

circumstances envisioned by § 1292(b). The statute's purpose is fulfilled in cases like this one,

where the criteria for interlocutory appeal are clearly met. The decision to certify an interlocutory

appeal lies within the sound discretion of the trial court, as recognized by case law such as *United

States v. Garner*, 749 F.2d 281, 286 (5th Cir. 1985) and *In re Air Crash Disaster Near New

Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1167 (5th Cir. 1987), among others.

In light of these factors, Plaintiff respectfully requests that the Court extend its grace and

certify the racial discrimination claims (both direct and disparate impact) against BHISD, Lance

Murphy, Greg Poole, and Ryan Ramirez for interlocutory appeal. Plaintiff does not seek to appeal

the Court's ruling regarding any other claims or Defendants, including the claims against Greg

Abbott and Ken Paxton.

### III.    CONCLUSION

For the reasons stated, Plaintiff respectfully requests certification of appeal for the racial

discrimination claims as pled.

Plaintiff prays for all relief to which he is entitled at law and in equity.


Respectfully submitted,


The Booker Law Firm
1200 Rothwell Street
Houston, Texas 77002
T: 713-292-2225
F: 713-583-3995

**By:   /s/Allie Booker**
Allie R. Booker SBN:
24071071
FBN: 1089873
booker@bookerlawfirm.com
LEAD COUNSEL


Law Office of Joseph K. Plumbar 1200
Rothwell Street
Houston, Texas 77002
T: 713-384-5507
F: 866-252-3048

**By:   /s/Joseph K. Plumbar**
Joseph K. Plumbar SBN:
24062331
FBN: 1493814
jplumbar@plumbarlaw.com
CO-COUNSEL

**NOTICE OF ELECTRONIC FILING**

I, Allie Booker, Plaintiffs' Attorney, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above in accordance with the Electronic Case Files System of the Southern Texas, on this the 29th day of August, 2024.

*/s/Allie Booker*
Allie Booker

**CERTIFICATE OF SERVICE**

I, Allie Booker, Plaintiffs' Attorney, do hereby certify that I have forwarded a true and correct copy of the above, to all parties in this case, in accordance with The Federal Rules of Civil Procedure, on this on this the 29th day of August, 2024.

*/s/Allie Booker*
Allie Booker

# EXHIBIT D

United States District Court
Southern District of Texas
**ENTERED**
October 08, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DARRYL GEORGE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | 3:24-cv-12 |
| | § | |
| GREG ABBOTT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>**ORDER**</u>

Before the court is the plaintiff's motion for permission to certify a ruling for interlocutory appeal. Dkt. 91. The court denies the motion.

George initially asserted various claims under § 1983, Title VI, Title IX, and state law. Dkt. 54. The court dismissed most of those claims in August, leaving only his Equal Protection sex-discrimination claim. Dkt. 76. George now seeks to appeal the order dismissing his direct and disparate impact racial discrimination claims under Title VI and Texas' Crown Act ("the race-related claims"). Dkt. 91.

The Fifth Circuit has jurisdiction over appeals from this court's orders (1) "granting, continuing, modifying, refusing or dissolving injunctions," (2) appointing receivers, and (3) determining admiralty parties' rights and liabilities. 28 U.S.C. § 1292(a). A district court may certify an order not

otherwise appealable if it involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* § 1292(b). The party seeking the appeal must provide the court with justification "sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009).

Action must be timely, too. "[W]hether or not a motion for certification was timely filed is a threshold question for a district court in deciding whether to certify an interlocutory order." *Teladoc, Inc. v. Tex. Med. Bd.*, No. 1:15-CV-343-RP, 2016 WL 4362208, at *3 (W.D. Tex. Aug. 15, 2016). The party seeking relief must file the motion to certify within a "reasonable time" of the order's entry. *See id.* (collecting cases demonstrating that district courts routinely exercise discretion to deny untimely motions to certify); *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). The movant must also file a Rule 5 application with the Court of Appeals within ten days. 28 U.S.C. § 1292(b); Fed. R. App. P. 5.

Because the race-related claims do not fall within § 1292(a)'s purview, George urges the court to certify his appeal pursuant to § 1292(b). Dkt. 91. In the order dismissing George's race-related claims, the court did not find

those claims involved a "controlling question of law" with "substantial ground for difference in opinion" nor that an immediate appeal would "materially advance the ultimate termination" of this case. Dkt. 76; 28 U.S.C. § 1292(b). George now raises the bare assertion that the application of Title VI and the Crown Act to claims of racial discrimination is a controlling question of law with a substantial ground for difference of opinion. Dkt. 91 at 1–2. But the court dismissed George's race-related claims because he had not adequately pleaded them—not because the law is unclear. Dkt. 76 at 16–19. George's conclusory motion suffers the same defect and fails to meet the high bar for § 1292(b) appeals. Dkt. 91; *See Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.,* 702 F.2d 67, 69 (5th Cir. 1983) ("Section 1292(b) appeals are exceptional.").

Nor would an appeal at this stage advance the termination of this case. George's gender-discrimination claim remains live. Dkt. 76. The Fifth Circuit has held certification improper when a party has claims remaining for adjudication at trial. *See, e.g.*, *Spurlin v. Gen. Motors Corp.*, 426 F.2d 294, 294–95 (5th Cir. 1970) (vacating district court's order allowing interlocutory appeal because "many parts of this case . . . remain open for a factual trial"); *United States v. Bear Marine Servs.*, 696 F.2d 1117, 1120 (5th Cir. 1983) ("[N]othing that we can do will prevent a trial of the negligence claim in this

case. . . . Action by this court will not, therefore, materially advance the ultimate termination of this litigation."). Moreover, certifying George's race-related claims for appeal would not eliminate the need for trial, simplify the issues, or make discovery less costly. *See Coates v. Brazoria Cnty.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013) (explaining the factors for materially advancing litigation's termination). If anything, an immediate appeal would achieve the opposite.

Even if George's race-related claims were substantively proper for a § 1292(b) appeal, he failed to act in time. The court issued its dismissal order on August 6th, 2024. Dkt. 76. George did not file a notice of interlocutory appeal until August 21st, Dkt. 86, followed by his motion to certify the appeal on August 29th, Dkt. 91. Although it is within the court's discretion to deem 23 days a "reasonable time" for filing the motion to certify, George has not yet filed his Rule 5 petition with the Fifth Circuit. *See George v. Abbott*, No. 24-40546 (5th Cir. appeal docketed Aug. 23, 2024); 28 U.S.C. § 1292(b) (requiring party seeking appeal to file Rule 5 petition within ten days of the order's entry). Because George's motion to certify does not satisfy Rule 5's substantive requirements[1] and the deadline to file the latter has passed, the

---

[1] Rule 5 requires petitions include a recitation of the facts, questions raised, relief sought, reasons for the appeal's necessity and authorization, and the complained

Fifth Circuit likely lacks jurisdiction over the appeal. *See Fridge v. City of Marksville*, 2022 WL 19765447, at *1; Fed. R. App. P. 5.

For these reasons, George's motion to certify an interlocutory appeal of the court's order dismissing his race-related claims is DENIED.

Signed on Galveston Island this 8th day of October, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

---

of order. Fed. R. App. P. 5(b)(1). The Fifth Circuit has suggested that a timely-filed notice of appeal that satisfies the substantive requirements of Rule 5 may cure an untimely Rule 5 petition. *See Fridge v. City of Marksville*, No. 22-30649, 2022 WL 19765447, at *1 (5th Cir. Dec. 1, 2022) (finding failure to file a Rule 5 petition, or a notice that contained Rule 5's required information, deprived the court of jurisdiction). George's notice of interlocutory appeal, Dkt. 86, states only that he intends to appeal the order granting the District's motion to dismiss, Dkt. 76. And while his motion to certify designates the race-related claims for appeal, it does not include the facts and legal authority required by Rule 5. Dkt. 91; Fed. R. App. 5(b)(1).